USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/14/12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

JOSEPH P. ERRICO and DR. THOMAS J.          :
ERRICO, as representatives of the former    :
common stockholders of SPINECORE, INC.,     :
and PHYSICIANS' FELLOWSHIP PARTNERS,        :
LLC, as the representatives of the former   :
preferred stockholders of SPINECORE, INC.,  :
                                            :
                              Plaintiffs,   :
                                            :
               -v.-                         :
                                            :
STRYKER CORPORATION,                        :
                                            :
                              Defendant.    :
-----------------------------------------------------------X

REPORT & RECOMMENDATION

10 Civ. 3960 (VM) (JLC)

**JAMES L. COTT, United States Magistrate Judge.**

**To the Honorable Victor Marrero, United States District Judge:**

Plaintiffs Joseph P. Errico and Dr. Thomas J. Errico (the "Erricos") bring this breach of

contract action on behalf of the former Common Stockholders of SpineCore, Inc. ("SpineCore"),

a company acquired by Defendant Stryker Corporation ("Stryker") in 2004. On December 14,

2010, the Court granted a motion by Stryker to join as plaintiffs the former Preferred

Stockholders of SpineCore, holding that they were required parties under Rule 19(a) of the

Federal Rules of Civil Procedure. Stryker now moves to dismiss Plaintiffs' Second Amended

Complaint pursuant to Rule 19(b) on the grounds that proceeding without the Preferred

Stockholders, whose joinder would defeat diversity jurisdiction, would potentially expose

Stryker to multiple and inconsistent judgments.[1] For the reasons set forth below, I recommend

that the motion be granted.

---

[1]    Since Stryker filed its motion, the Erricos, as the representatives of the former Common
       Stockholders of SpineCore, and Physicians' Fellowship Partners, LLC ("PFP")
       (collectively referred to as "Plaintiffs") moved for leave to file a third amended
       complaint. (Dkt. No. 84). By separate Order dated March 14, 2012, the Court has

1

USDC SDNY
DATE SCANNED  3/14/12

## I.     BACKGROUND

The facts and procedural history of this case were previously described in the Court's

Memorandum and Order dated December 14, 2010 (the "December 14 Opinion" or "Opinion"),

see Errico v. Stryker, No. 10 Civ. 3960 (VM) (JLC), 2010 WL 5174361 (S.D.N.Y. Dec. 14,

2010), familiarity with which is assumed.  Plaintiffs filed an initial complaint on July 20, 2010

against Stryker for breach of a 2004 Merger Agreement between, among others, Stryker and

SpineCore in connection with the development of a lumbar artificial spinal disc ("FlexiCore")

and a cervical artificial spinal disc ("CerviCore").  (See Dkt. No. 21).  SpineCore consisted of

Common Stockholders and Preferred Stockholders.  While Plaintiffs were suing in the initial

complaint on behalf of the former Common Stockholders of SpineCore, they were not suing on

behalf of the company's former Preferred Stockholders, which include Warburg Pincus Private

Equity VIII, L.P., Vertical Fund I., L.P., Vertical Fund II, L.P., and Physicians' Fellowship

Partners, LLC.  One of the Preferred Stockholders—PFP—was joined as a Plaintiff in the Third

Amended Complaint, while the remaining three Preferred Stockholders (the "Absent Preferred

Stockholders") are not parties to this action.

Plaintiffs are suing Stryker for its alleged failure to use commercially reasonable efforts

to achieve the commercial launch of FlexiCore and CerviCore.  (Compl. ¶ 7).  Plaintiffs seek as

damages the "milestone payments" to the Common and Preferred Stockholders that were

mandated by the parties' Merger Agreement upon "commercial launch" of the products.

---

granted that motion, which was unopposed.  The Third Amended Complaint, inter alia,
added allegations regarding Stryker's conduct after the filing of the Second Amended
Complaint, and added PFP as an additional Plaintiff suing on behalf of and as a
representative of the Preferred Stockholders.  (See Third Amended Complaint, dated Apr.
7, 2011 ("Compl.") (Dkt. No. 85)).  While Stryker's motion refers to the Second
Amended Complaint, the Court cites to the Third Amended Complaint in this Report and
Recommendation, as the differences are not material for purposes of resolving the
motion.  In addition, the Court has changed the caption to reflect the addition of PFP as a
party to this action.

(Compl. ¶¶ 25-26 & at 82-83).  Plaintiffs acknowledge that the Preferred Stockholders have a

priority interest over the Common Stockholders in the first milestone payment.  (Id. ¶ 27).  As a

result, the Complaint provides that the Preferred Stockholders will be paid the first $48 million

of any recovery.  (Id.).

On October 22, 2010, Stryker moved to join the Preferred Stockholders as required

parties under Rule 19(a).  (Dkt. No. 34).  Plaintiffs did not oppose the motion.  (Dkt. No. 40).

On December 14, 2010, the Court granted Stryker's motion, holding that the Preferred

Stockholders were required parties under Rule 19(a) and directed Plaintiffs either to join the

Preferred Stockholders or their representative(s) voluntarily or to advise the Court if they refused

to join.  The Absent Preferred Stockholders refused to join and, as directed by the Court (Dkt.

No. 53), submitted evidence demonstrating that their joinder would defeat diversity jurisdiction.

(Dkt. Nos. 55-59).  Because involuntary joinder of the Absent Preferred Stockholders would

defeat diversity jurisdiction, and the parties agree as much, Stryker moved on March 4, 2011 to

dismiss the Complaint pursuant to Rule 19(b).  (See Memorandum of Law in Support of

Stryker's Motion to Dismiss, dated Mar. 4, 2011 ("Def. Mem."), at 5 (Dkt. No. 72);

Memorandum of Law in Opposition to Stryker's Motion to Dismiss, dated Mar. 24, 2011 ("Pl.

Opp."), at 2 (Dkt. No. 83)).  Plaintiffs opposed the motion on March 25, 2011 and Stryker filed a

reply on April 1, 2011.  (See Reply Memorandum of Law in Support of Stryker's Motion to

Dismiss, dated Apr. 1, 2011 ("Def. Reply Mem.") (undocketed)).[2]  The motion was withdrawn

without prejudice during the pendency of lengthy settlement discussions in 2011 (Dkt. No. 87),

---

[2]     While the docket contains redacted versions of Stryker's Memorandum of Law and
        Plaintiffs' Opposition Memorandum of Law (Dkt. Nos. 72, 83), it does not contain any
        electronic copy of Stryker's Reply Memorandum of Law.  Pursuant to the Protective
        Order governing this case (Dkt. No. 26), counsel have filed unredacted copies of these
        documents under seal.

and reinstated in November 2011 when the case was not resolved through mediation. (Dkt. No. 88).

## II.  DISCUSSION

### A.  Legal Standard

Rule 19(b) provides that where joinder of a required party is not feasible, a court must determine "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). Having held that the Preferred Stockholders are required parties under Rule 19(a), the Court must now decide whether to dismiss this case under Rule 19(b). See Viacom Int'l, Inc. v. Kearney, 212 F.3d 721, 725 (2d Cir. 2000) (after making threshold finding that absent party is required under Rule 19(a), and that joinder is not feasible, court must determine whether non-joinder commands dismissal).[3] To make that determination, courts consider four non-exclusive factors:

> (1)  the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2)  the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures;
> (3)  whether a judgment rendered in the person's absence would be adequate; and
> (4)  whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b); see also CP Solutions PTE, Ltd. v. Gen. Elec. Co., 553 F.3d 156, 159 (2d Cir. 2009). "[V]ery few cases should be terminated due to the absence of nondiverse parties

---

[3]  Prior to the 2007 revisions of the Federal Rules of Civil Procedure, if a court found that the absent party whose joinder was not feasible was "indispensible," meaning that the factors set forth in Rule 19(b) disfavored proceeding without that party, the court was required to dismiss the action. See, e.g., ConnTech Dev. Co. v. Univ. of Conn. Educ. Props., Inc., 102 F.3d 677, 681-82 (2d Cir. 1996). The Rules have since removed the word "indispensible," which "had an unforgiving connotation that did not fit easily with a system that permits actions to proceed even when some persons who otherwise should be parties to the action cannot be joined." Republic of Philippines v. Pimentel, 553 U.S. 851, 863 (2008) ("Pimentel").

unless there has been a reasoned determination that their nonjoinder makes just resolution of the action impossible." Universal Reinsurance Co. v. St. Paul Fire & Marine Ins. Co., 312 F.3d 82, 87 (2d Cir. 2002) (citation and quotation marks omitted).

In assessing the Rule 19(b) factors, courts have adopted a "flexible approach," id., and their analysis is "case-specific." Pimentel, 553 U.S. at 864. "District courts are afforded substantial discretion in weighing the Rule 19(b) factors and in determining how heavily to emphasize certain considerations in deciding whether the action should go forward in the absence of someone needed for a complete adjudication of the dispute." Walker v. City of Waterbury, 253 F. App'x 58, 62 (2d Cir. 2007) (citations and quotation marks omitted). Accordingly, "[t]he decision whether to dismiss an action for failure to join an indispensible party is . . . more in the arena of a factual determination than a legal one." Id. (citation and quotation marks omitted).

### B.    First Factor – Prejudice to the Existing and Absent Parties

The first Rule 19(b) factor requires the Court to determine the "extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties." Fed. R. Civ. P. 19(b)(1). Analysis of this factor overlaps considerably with the Rule 19(a) analysis, as both require the Court to determine the potential for prejudice to existing and absent parties. See 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1608, at 92 (3d ed. 2001, rev. 2010); see also Gardiner v. Virgin Islands Water & Power Auth., 145 F.3d 635, 641 n.4 (3d Cir. 1998).

In light of the overlap between Rule 19(a) and 19(b), Stryker's arguments for the existence of prejudice under Rule 19(b) mirror the Court's analysis in the December 14 Opinion concluding that the Preferred Stockholders are required parties under Rule 19(a). Stryker contends that it would potentially be "exposed to double, multiple, or otherwise inconsistent

obligations" if it were to prevail in this lawsuit.  (Def. Mem. at 9-10 (quoting Errico, 2010 WL 5174361, at *4)).  Quoting from the Court's Opinion, Stryker argues that "the [Absent] Preferred Stockholders may not be bound by res judicata and could commence another action against it arising from the same facts and circumstances alleged in this lawsuit," namely Stryker's alleged failure to perform under the Merger Agreement.  (Id. at 9 (quoting Errico, 2010 WL 5174361, at *4)).  Conversely, Stryker continues, a favorable judgment without the presence of the Absent Preferred Stockholders might also prejudice those Stockholders.  If res judicata were to apply, such a decision could impede the Absent Preferred Stockholders from bringing a subsequent lawsuit.  Should a court decline to apply res judicata, the Absent Preferred Stockholders may still be impaired in protecting their interests by virtue of any negative precedential effect of a judgment by this Court, for example by weakening their bargaining position for settlement purposes.  (Id. at 10 (citing Errico, 2010 WL 5174361, at *4)).

   In the December 14 Opinion, the Court concluded that under Rule 19(a), the disposition of this action without the Preferred Stockholders could impair or impede their interests and potentially expose Stryker to multiple or inconsistent judgments.  As the law of the case, those conclusions also apply under Rule 19(b).  See Errico, 2010 WL 5174361, at *4; see also Smith v. Kessner, 183 F.R.D. 373, 376 (S.D.N.Y. 1998) (noting similarity of factors in determining prejudice under Rule 19(a) and 19(b)).  To dispute that either Stryker or the Absent Preferred Stockholders will suffer any prejudice, Plaintiffs assert several new arguments in opposition to Stryker's motion to dismiss, none of which persuade the Court that it can proceed without the absent parties "in equity and good conscience."

### 1.    The Absent Preferred Stockholders are Joint Obligees to the Merger Agreement

   Stryker argues that this lawsuit should not proceed without the Absent Preferred Stockholders because they are signatories to the Merger Agreement.  Plaintiffs challenge

Stryker's argument by asserting, correctly, that the Second Circuit has rejected a bright-line rule that all parties to a contract are "indispensible" under Rule 19(b).  (Pl. Opp. at 13-14).  See CP Solutions PTE, Ltd., 553 F.3d at 159.  However, Plaintiffs fail to distinguish between joint obligors and joint obligees to a contract.  The Preferred Stockholders are not required parties simply because they signed the Merger Agreement.  Rather, the Preferred Stockholders are required "by virtue of their status as joint obligees," Errico, 2010 WL 5174361, at *5, meaning that the Agreement calls for payments to be made to the Preferred Stockholders.

    As joint obligees, the Absent Preferred Stockholders may seek to enforce Stryker's obligation to them in a subsequent lawsuit.  See, e.g., William A. Gross Constr. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co., No. 07 Civ. 10639 (LAK) (AJP), 2009 WL 427280, at *11 n.24 (S.D.N.Y. Feb. 23, 2009) ("[W]here the absent party is a joint obligee rather than a joint obligor, the courts will dismiss on indispensability grounds, because the absent party could bring a separate action, subjecting the obligors 'to double liability on the same claim.'") (quoting Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399, 408 (3d Cir. 1993)); Wright, Miller & Kane, § 1613, at 181-82 (nonjoinder of joint obligees leads to dismissal because "the duty or promise was made to the obligees jointly, not separately, and [therefore] mandatory joinder is justified").  Here, Stryker's obligation to make milestone payments applies to the Preferred Stockholders jointly, not separately.  If res judicata were found not to apply to any judgment secured by the Plaintiffs in this case, and it may not, see infra II.B.2, Stryker might then be subject to multiple or inconsistent judgments.  Accordingly, as the Court concluded in the December 14 Opinion, nonjoinder of the Absent Preferred Stockholders, who are joint obligees under the Merger Agreement, exposes Stryker to a substantial risk of prejudice.

### 2.      PFP's Joinder Does Not Reduce the Likelihood of Prejudice

Plaintiffs assert that joinder of Physicians' Fellowship Partners, LLC in the Third

Amended Complaint is sufficient to remedy the possibility of any prejudice to either Stryker or

the Absent Preferred Stockholders.  (Pl. Opp. at 12-13, 15, 19-22).  Plaintiffs contend that the

presence of PFP neutralizes the risk that Stryker would be subject to multiple and inconsistent

judgments because all of the Preferred Stockholders would be bound by any judgment of this

Court under the principle of res judicata by virtue of PFP's participation.  (Id. at 19).  In addition,

Plaintiffs aver that PFP can adequately protect the interests of the Absent Preferred Stockholders

because, like the other Preferred Stockholders, PFP has an interest in a portion of the milestone

payment due to the Preferred Stockholders under the Merger Agreement.  (Id. at 12-13).  These

arguments, if found to be valid, would appear to end the Rule 19(b) inquiry and allow this case to

proceed without the Absent Preferred Stockholders.

Plaintiffs argue that PFP's representation of the Absent Preferred Stockholders is

adequate for preclusion purposes because it meets the following criteria:  (1) the interests of PFP

and the Absent Preferred Stockholders are aligned; (2) PFP understands itself to be acting in a

representative capacity and the Court took care to protect the interests of the Absent Preferred

Stockholders; and (3) the Absent Preferred Stockholders have been notified of this lawsuit and

given an opportunity to participate.  (Id. at 19-22).  See Taylor v. Sturgell, 553 U.S. 880, 900

(2008) (listing "minimum" requirements that must be met for party's representation of nonparty

to be "adequate" for preclusion purposes).  However, the facts underlying PFP's participation,

and the Absent Preferred Stockholders' non-participation, call into question whether their

interests are aligned and if the Absent Preferred Stockholders will be bound by a judgment

rendered in their absence.

PFP is one of the four former Preferred Stockholders of SpineCore.  (Compl. ¶ 17).  In this lawsuit, it is purporting to sue "in a representative capacity on behalf of itself and the other three former [P]referred [S]tockholders."  (Id. ¶ 18).  However, PFP was not appointed to be the "Preferred Stockholder Representative," a designated representative who is authorized under Section 16.02 of the Merger Agreement to "take such action on behalf of the Former [Preferred Stockholders] as [the Preferred Stockholder Representative] may deem reasonably appropriate in furtherance of the interests of the Former [Preferred Stockholders]."  (Declaration of Timothy Curt, dated Feb. 14, 2011 ("Curt Decl."), Ex. A, § 16.02(c) (Dkt. No. 59)).  Accordingly, as Plaintiffs concede, PFP is not specifically authorized under the Merger Agreement to sue on behalf of all of the Preferred Stockholders in a representative capacity.[4]  (Pl. Opp. at 12).  Even so, Plaintiffs contend, PFP can still sue in a representative capacity because Section 16.02 is not an exclusive delegation provision.  (Pl. Opp. at 12).  Plaintiffs assert that "[n]othing in the Merger Agreement or other documents prohibits one of the Preferred Stockholders, such as PFP, from suing in a representative capacity on behalf of all of the Preferred Stockholders."  (Compl. ¶ 34).

The distinction between an authorized "Preferred Stockholder Representative" and a self-appointed representative, as PFP purports to be, is a critical one for purposes of determining whether PFP's interests are aligned with those of Warburg Pincus Private Equity VIII, L.P., Vertical Fund I., L.P., and Vertical Fund II, L.P.  Under the Merger Agreement, any action by the designated Preferred Stockholder Representative is "effective and absolutely binding" on each Preferred Stockholder.  (Curt Decl., Ex. A, § 16.03).  But the same does not appear to be true with respect to a self-designated representative such as PFP.  There is nothing in the record

---

[4]     By contrast, the Common Stockholders appointed the Erricos as their "exclusive agent and attorney-in-fact" to act on their behalf in this lawsuit.  As the designated representative of the Common Stockholders, only the Erricos may sue in a representative capacity on behalf of the Common Stockholders.  (Compl. ¶ 32).

to suggest that any action by PFP is binding on, or even required to be taken in consultation with, any of the other Preferred Stockholders.  Absent any contractual requirement to act in a representative capacity, PFP's promise to represent the interests of the Absent Preferred Stockholders is unsupported.

As a consequence, even in light of the Absent Preferred Stockholders' awareness of this lawsuit and the Court's providing them an opportunity to participate, PFP's interests are not aligned with those of the absent parties.  For example, nothing appears to prevent PFP from seeking a judgment in this case, or an amount in any settlement negotiations, that is only proportional to its share of the initial milestone payment (which, assuming proportional payment between the four Preferred Stockholders, would be $12 million).  PFP and the Absent Preferred Stockholders are also represented by different counsel, further questioning any assertion that their interests are aligned.  See, e.g., CP Solutions PTE, Ltd., 553 F.3d at 160 (existing party could champion interest of absent party because both represented by same counsel).  Because their interests are not aligned, PFP's representation of the Absent Preferred Stockholders is not "adequate" for preclusion purposes, see Taylor, 553 U.S. at 900, leaving Stryker potentially exposed to multiple judgments in lawsuits brought by the Absent Preferred Stockholders, a result that neither achieves judicial economy nor minimizes prejudice.

The actions of the Absent Preferred Stockholders to avoid the jurisdiction of this Court following the December 14 Opinion further confirm that their interests are not aligned with PFP's and that, if anything, they hope to preserve their right to file a subsequent lawsuit against Stryker.  In January 2011, upon learning that their Preferred Stockholder Representative could be joined without defeating diversity jurisdiction, the Preferred Stockholders replaced that Representative with a non-diverse Delaware entity.  (Def. Mem. at 4-6; Curt Decl. ¶¶ 9, 11). Neither party disputes the likely possibility that the Preferred Stockholders changed their

Representative assignment for the specific purpose of avoiding jurisdiction in this case. (Def. Mem. at 2; Pl. Opp. at 2). In doing so, the Preferred Stockholders ensured that joinder of the only designated representative who has binding authority over all of the Preferred Stockholders would not be feasible.

Treating PFP as a <u>de facto</u> Preferred Stockholder Representative, as Plaintiffs in effect urge the Court to do, overlooks the fact that PFP does not have binding authority over the other three Preferred Stockholders and, more generally, that the Absent Preferred Stockholders are distinct from PFP. Any assumption that the interests of PFP and the remaining Preferred Stockholders are aligned requires the Court to ignore the actions by Warburg Pincus Private Equity VIII, L.P., Vertical Fund I., L.P., and Vertical Fund II, L.P. to protect their interests in the Merger Agreement. <u>See</u> <u>Envirotech Corp. v. Bethlehem Steel Corp.</u>, 729 F.2d 70, 76 (2d Cir. 1984) ("Equity and good conscience would seem to require that under circumstances such as those present here, parties should present their claims in a state court rather than attempt to manipulate jurisdiction by dropping plaintiffs with a substantial interest in the claim solely for the purpose of retaining jurisdiction in the federal court.") (citations and quotation marks omitted). Accordingly, because Stryker and the Absent Preferred Shareholders may suffer prejudice if this case proceeds in this Court, <u>see</u> <u>Errico</u>, 2010 WL 5174361, at *4-5, and because that prejudice is not mitigated by the presence of PFP, the first factor of Rule 19(b) weighs in favor of dismissal.[5]

---

[5]    Even assuming, <u>arguendo</u>, that PFP can represent the interests of Absent Preferred Stockholders sufficient to avoid any prejudice to Stryker or the Absent Preferred Stockholders, Plaintiffs have failed to demonstrate that PFP is a diverse Plaintiff. (Def. Reply Mem. at 6). PFP is a Delaware limited liability company comprised of approximately 50 members. (Compl. ¶ 17). For purposes of diversity jurisdiction, an LLC's citizenship is determined by the citizenship of each of its members. <u>See</u>, <u>e.g.</u>, <u>Handelsman v. Bedford Village Assocs. Ltd.</u>, 213 F.3d 48, 51-52 (2d Cir. 2000). Plaintiffs have not provided any information about the citizenship of each of PFP's

C.      **Second Factor – Lessening or Avoiding Prejudice**

The second Rule 19(b) factor calls for the Court to examine "the extent to which any

prejudice could be lessened or avoided by" protective measures in the Court's judgment or other

measures appropriately shaping the relief.  Fed. R. Civ. P. 19(b)(2).  Plaintiffs first contend that

the Complaint itself contains protective measures by providing for the first $48 million of any

recovery in this case to be paid to the Preferred Stockholders, reflecting the priority interest held

by the Preferred Stockholders in the Merger Agreement.  (Pl. Opp. at 17).  Plaintiffs propose that

the Court could further shape the relief between the existing parties by issuing "a temporary stay

on the payment of the proceeds to allow the assertion of any claims for additional amounts as

between the two classes of former stockholders."  (Id.).

Plaintiffs' proposed solution is adopted from Settlement Funding, LLC v. AXA Equitable

Life Insurance Co., No. 06 Civ. 5743 (HB), 2010 WL 3825735, at *11 (S.D.N.Y. Sept. 30,

2010), where the court explored the possibility of issuing a temporary stay on the payment of any

insurance proceeds so that potential beneficiaries, who were absent from the case, could seek to

enforce their rights in a separate lawsuit.  In considering such a proposal, however, the court

noted that the interests of the absent beneficiaries and plaintiff were aligned and that there was

no alternate forum for the plaintiff to seek relief.  See id.  Neither of those factors is present in

this case.  Moreover, as Stryker observes (Def. Reply Mem. at 7), the Complaint's provision for

priority payment and Plaintiffs' proposed temporary stay would only potentially reduce prejudice

to Stryker if Plaintiffs were to prevail in this lawsuit.  If Stryker prevails, a temporary stay would

not prevent the Absent Preferred Stockholders from seeking to enforce their rights in a

subsequent lawsuit.  Accordingly, Plaintiffs' proposed solution does not lessen the risk that

Stryker will be subject to multiple or inconsistent judgments.

_____

members.  Accordingly, the Court is unable to determine whether PFP is a diverse
Plaintiff.

### D.      Third Factor – Adequacy of Judgment

The third factor under Rule 19(b) requires the Court to consider "whether a judgment rendered in the person's absence would be adequate."  Fed. R. Civ. P. 19(b)(3).  "[A]dequacy refers to the 'public stake in settling disputes by wholes, whenever possible.'"  Pimentel, 553 U.S. at 870 (quoting Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 111 (1968)).  A court's emphasis on wholesale resolution of disputes is rooted in the "'social interest in the efficient administration of justice and the avoidance of multiple litigation.'"  Id. (quoting Ill. Brick Co. v. Illinois, 431 U.S. 720, 738 (1977)).  Courts (including the Supreme Court) have considered, for example, whether a judgment rendered without an absent party would bind that party under res judicata in any subsequent litigation, see, e.g., Pimentel, 553 U.S. at 870-71 (proceeding without absent parties not in public interest because absent parties would not be bound by judgment), and whether the absent party is likely to sue or be sued by any existing party.  See, e.g., CP Solutions PTE, Ltd., 553 F.3d at 160 (piecemeal litigation improbable where plaintiff unlikely to sue dissolved absent defendant without assets).

Plaintiffs argue that any judgment rendered without the Absent Preferred Stockholders would be adequate because PFP's provision of "adequate representation" ensures that Stryker will not be exposed to inconsistent judgments.  However, as demonstrated above, PFP's capacity to bind the Absent Preferred Stockholders under res judicata is far from certain.  Moreover, unlike in CP Solutions PTE, Ltd., 553 F.3d at 160—where the financial status of the absent foreign corporation made subsequent litigation, and potential inconsistent judgments, improbable—there is nothing here to suggest that the Absent Preferred Stockholders are not financially solvent.  As such, they are capable of enforcing their rights against Stryker in state court, thereby potentially exposing Stryker to multiple judgments.  Accordingly, because the

probability of piecemeal litigation is high, this Court cannot render an adequate judgment in the absence of all of the Preferred Stockholders.

### E.        Fourth Factor – Availability of Alternate Forums

The fourth factor under Rule 19(b) also weighs in favor of dismissing this case.  The Court must consider whether Plaintiffs "would have an adequate remedy if [this] action were dismissed for nonjoinder."  Fed. R. Civ. P. 19(b)(4).  The Court must assess the "harm to judicial economy resulting from dismissal," as "the bare fact that a state court forum is available does not, by itself, make it appropriate to dismiss the federal action."  CP Solutions PTE, Ltd., 553 F.3d at 161 (citation and quotation marks omitted).  Stryker argues that there are several alternate state court forums where this litigation can proceed:  New York, where all parties have consented to jurisdiction in the Merger Agreement (Curt Decl., Ex. A, §17.16(a)); Michigan, where Stryker resides and has filed a state court action seeking declaratory relief on claims arising out of the Merger Agreement; and New Jersey, where the Erricos and three of the four Preferred Stockholders have their principal place of business.  (Def. Mem. at 12).

Plaintiffs do not dispute that these alternate state court forums may be available; rather, they contend that they will suffer prejudice if this case is dismissed because there "already has been extensive litigation in this action" and Plaintiffs should not have to "start over in state court."  (Pl. Opp. at 18).  Defendants disagree that the litigation has proceeded as far along as Plaintiffs suggest.  (Def. Mem. at 14 n.3).  As an initial matter, while the parties have been litigating this case for nearly two years—leaving aside the fact that formal proceedings were suspended for several months in 2011 during extended settlement discussions—the procedural posture of the case has not proceeded beyond a point of no return.  Discovery is well underway, but, to the Court's knowledge, no depositions have been taken.  No motion for summary judgment has been filed.  Indeed, courts have granted Rule 19(b) dismissal motions where the

14

case was farther along than here.  See, e.g., Travelers Indem. Co. v. Household Int'l, Inc., 775 F.

Supp. 518, 520, 528-29 (D. Conn. 1991) (dismissing case under Rule 19(b) for lack of diversity

jurisdiction 15 months after plaintiff prevailed on summary judgment).  In addition, Plaintiffs'

prejudice claim is weakened by the fact that Stryker raised the issue of joinder as early as July

2010.  (Def. Mem. at 3; Def. Reply Mem. at 8).  Plaintiffs were thus on notice of the potential

jurisdictional defect within two months of filing the initial complaint, but sought to join the

Preferred Stockholders only after being ordered to do so by the Court five months later.

  Moreover, the presence of Stryker's lawsuit in Michigan state court ensures that Plaintiffs

will not have to "start over," as that lawsuit is already underway and provides an adequate forum

for Plaintiffs (and the Preferred Stockholders) to litigate their rights under the Merger

Agreement.  But if all the required parties are not subject to personal jurisdiction in Michigan, as

Plaintiffs contend may be the case (Pl. Opp. at 24), Plaintiffs may refile their lawsuit in state

court in New York, where the parties have consented to jurisdiction.[6]  While this may reset the

litigation in a procedural sense, judicial economy is better served with a state court lawsuit

involving all required parties, instead of a judgment from a federal court that does not resolve the

dispute between all parties, and leaves open the possibility for further litigation.

  In any event, a lawsuit by Plaintiffs in state court would likely allege identical facts and

seek the same damages that are sought in this action.  See, e.g., Smith, 183 F.R.D. at 376

(alternate forum exists where plaintiffs brought lawsuit in state court with same facts and

damages).  As a practical matter, therefore, while Plaintiffs have engaged in significant

document discovery thus far in this case, there would likely be considerable overlap with the

---

[6]  Plaintiffs argue that Stryker will move to dismiss any lawsuit in state court in New York,
"resulting in another six months or more of delay." (Pl. Opp. at 18).  That Stryker may
challenge Plaintiffs' election of a state court forum, however, does not affect the
conclusion under the fourth factor of Rule 19(b) that the parties have available adequate
alternate forums.

discovery demands in any state court action, which should serve to reduce time and expense.

Most importantly, a state court in Michigan, New York, or New Jersey would allow all parties

with a substantial interest in the Merger Agreement, including all of the Preferred Stockholders,

to enforce their rights in one action, and to avoid the potential for piecemeal resolution and

inconsistent judgments.  Accordingly, the adequacy of state court forums also weighs in favor of

dismissing this action under Rule 19(b).

### III.   CONCLUSION

For the reasons stated herein, I recommend that Stryker's motion to dismiss pursuant to

Rule 19(b) be granted.[7]

### PROCEDURE FOR FILING OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties shall have fourteen (14) days from service of this Report to file written

objections to the Report and Recommendation, set forth in Section I above.  See also Fed. R.

Civ. P. 6.  Such objections, and any responses to such objections, shall be filed with the Clerk of

Court, with courtesy copies delivered to the chambers of the Honorable Victor Marrero and to

---

[7]   Stryker has asserted counterclaims to the Second Amended Complaint for, inter alia,
      breach of the Erricos' employment and consulting agreements with Stryker, breach of
      fiduciary duty, and breach of duty of loyalty. (See Answer, Affirmative Defenses &
      Amended Counterclaims to Plaintiffs' Second Amended Complaint, dated Apr. 1, 2011
      (undocketed)).  The Erricos have also asserted counterclaims against Stryker for breach
      of the employment and consulting agreements. (See Answer and Affirmative Defenses to
      Amended Counterclaims of Stryker Corporation and Counterclaims Against Stryker
      Corporation, dated Apr. 15, 2011 (undocketed)).  Neither party has asserted any
      counterclaims in connection with the Third Amended Complaint.  Nor has either party
      argued that its respective counterclaims should continue to be litigated in federal court in
      the event that Plaintiffs' Third Amended Complaint is dismissed—for example, that the
      absent parties are not required for the resolution of the counterclaims, or that the Court
      has an independent basis of jurisdiction over those claims.  Accordingly, because judicial
      economy favors resolution of all related claims in one forum, the Court should dismiss
      both parties' counterclaims without prejudice to their being refiled in state court.

the chambers of the undersigned, United States Courthouse, 500 Pearl Street, New York, New

York, 10007.

Any requests for an extension of time for filing objections must be directed to Judge

Marrero. **FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL**

**RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE**

**REVIEW.** See Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson,

Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010) (citing

Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003) and Mario v. P & C Food Mkts., Inc., 313 F.3d

758, 766 (2d Cir. 2002)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.


Dated: New York, New York
       March 14, 2012

JAMES L. COTT
United States Magistrate Judge


**Copies of this Report and Recommendation have been sent by ECF to all counsel of record
and by mail to the following:**

Mary Eaton
Willkie Farr & Gallagher
787 Seventh Avenue
New York, NY 10019